IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

```
CHERYL KRAJCSIK, et vir.       *

          Plaintiffs           *

       vs.                     *   CIVIL ACTION NO. MJG-15-3708

CECIL RAMSEY, et ux.           *

          Defendants           *

*    *    *    *    *    *    *    *    *
```

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it the Defendants' Motion for Summary Judgment [ECF No. 20] and the materials submitted relating thereto. The Court has held a hearing and had the benefit of the arguments of counsel.

I. BACKGROUND[1]

On August 10, 2014, Plaintiffs Cheryl and Robert Krajcsik ("Plaintiffs")[2] and Defendants Cecil and Sarah Ramsey ("Defendants") were in their respective boats moored in the Eastern Yacht Club Marina on the Middle River in Essex,

---

[1] The "facts" stated herein are as contended by Plaintiffs and not necessarily agreed to by Defendants.
[2] Plaintiffs also had Cheryl Krajcsik's 12-13 year-old niece aboard.

Maryland. They intended to take their boats to Strawberry Point and enjoy a day of swimming.

The Krajcsiks departed the marina basin first in their Sea Ray Sundancer (the "Sundancer"). At some point, they realized that the Defendants had not left the marina and stopped to determine why. Mrs. Krajcsik spoke on the telephone to Mrs. Ramsey and was informed that the Ramsey's 330 Mariner (the "Mariner") had steering problems[3] and was stopped outside the marina. Mrs. Ramsey said she had called for a towboat to come and tow the Mariner back to the marina. However, after fifteen minutes, Mrs. Krajcsik had not seen any towboat arriving and made a second telephone call to Mrs. Ramsey. Because the parties present different versions of the second call, the Court must assume for present purposes that Plaintiffs' version is the correct one. That is, that Plaintiffs, Mr. and Mrs. Krajcsik, believed that the Defendants' Mariner was drifting "dangerously close to a rock jetty" and considered the Mariner to be in danger. [ECF No. 23] at 2. With Defendants' permission, the Plaintiffs decided to attempt to rescue the Mariner.

---

[3] Plaintiffs contend that the Defendants had negligently taken the Mariner out of the marina. Defendants deny that they were negligent.

The rescue effort, planned by Plaintiffs, called for Plaintiffs to move their boat, the Sundancer, adjacent to the Mariner, to tie the two vessels together, and to use the Sundancer's power to tow the Mariner away from the rocks and back to the marina.

Mr. Krajcsik maneuvered the Sundancer next to the Mariner and Mrs. Krajcsik held out a line to Mrs. Ramsey. Mr. Ramsey jumped from the Mariner onto the Sundancer and proceeded to tie the two boats together from the Sundancer's bow to the Mariner's stern. Mr. Krajcsik testified that there were lines on both the front and back of the Plaintiffs' Sundancer going over to the Defendants' Mariner. R. Krajcsik Dep. at 31-32 [ECF No. 23-2]. While Mrs. Krajcsik was standing on the gunwale of the Sundancer, Mr. Krajcsik made an announcement: he "you know informed everybody, you know, hold on. We're pretty much tied up. I'm going to put the vessel in reverse and back us away slowly from the hazard." Id. at 32.

At the time of this announcement, Mr. Krajcsik did not suggest that his wife move from her location on the Sundancer's gunwale adjacent to the side of the Defendants' Mariner. Id. at 33. Mr. Krajcsik put the Sundancer in reverse and the boat slowly drifted back. At this time, an unexpected wave, possibly from a passing boat, came through and affected the two boats.

3

The side of the Sundancer dropped, and the Mariner heaved upwards. The gunwale of the Mariner came down over the gunwale of the Sundancer, made contact with Mrs. Krajcsik's leg, and crushed her big toe.  Mrs. Krajcsik's toe eventually required amputation.

In the Amended Complaint [ECF No. 32], the Plaintiffs present their claims in two counts:

Count One: Negligence (Both Plaintiffs)

Count Two: Loss of Consortium (Mr. Krajcsik)

 By the instant motion, Defendants seek summary judgment in regard to all claims presented. [ECF No. 20].


II.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the pleadings and supporting documents show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact-finder could

return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).

Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999). However, "self-serving, conclusory, and uncorroborated statements are insufficient to create a genuine issue of material fact." Int'l Waste Indus. Corp v. Cape Envtl. Mgmt., Inc., 988 F. Supp. 2d 542, 558 n. 11 (D. Md. 2013).

When evaluating a motion for summary judgment, the Court must bear in mind that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex, 477 U.S. at 327 (quoting Rule 1 of the Federal Rules of Civil Procedure).

III. DISCUSSION

To adequately plead a cause of action for negligence under general maritime law, Plaintiff must allege facts sufficient to support plausible claims that:

> (1) There was a duty owed by the defendant to the plaintiff;
>
> (2) The duty was breached;
>
> (3) The plaintiff sustained injury; and
>
> (4) There is a causal connection between the defendant's conduct and the plaintiff's injury.

Vollmar v. O.C. Seacrets, Inc., 831 F. Supp. 2d 862, 866 (D. Md. 2011).

The instant case invokes the rescue doctrine, sometimes referred to as the "danger-invites-rescue" doctrine.[4] In negligence actions, the rescue doctrine allows a rescuer to

---

[4] The common law rescue doctrine is sometimes confused with "Good Samaritan" statutes, which may immunize potential rescuers from civil liability arising from negligent rescue attempts. Anthony Acciaioli, Swept Away: Should Courts Retain Recklessness Standard in Assessing Rescuer Injury Claims Under the Maritime Rescue Doctrine?, 91 Notre Dame L. Rev. 2155, 2158 (2016). The rescue doctrine is related to, but separate from, the affirmative duty to rescue an imperiled party that the courts impose on persons in some situations. See Prosser & Keeton on the Law of Torts § 56, at 373-85 (W. Keeton 5th ed. 1984)(discussing affirmative duty to rescue). There is also the similar "emergency doctrine," which "relieves a person of liability for his actions when that person is faced with a sudden emergency that he didn't help to create." Cords v. Anderson, 259 N.W.2d 672, 682 (Wis. 1977).

recover from a rescued party if the rescuer is injured in the course of a rescue. McCoy v. Am. Suzuki Motor Corp., 961 P.2d 952, 955–56 (Wash. 1998); see also Fulton v. St. Louis-San Francisco Ry., 675 F.2d 1130, 1134 (10th Cir. 1982)("[T]he rescue doctrine also permits a rescuer to recover for his injuries from the imperiled party if that person has negligently placed himself in danger."); Wagner v. Int'l Ry. Co., 133 N.E. 437, 438 (N.Y. 1921)("The wrongdoer may not have foreseen the coming of a deliverer. He is accountable as if he had."); Maryland Steel Co. v. Marney, 42 A. 60, 66 (1898)(noting that the law encourages rescues and will not impute negligence to the rescuer unless the rescuer acts rashly).

The rescue or "danger-invites-rescue" doctrine "creates a duty of care towards a potential rescuer where the culpable [rescued] party has placed himself in an imminently perilous situation which invites rescue." Khalil v. Guardino, 300 A.D.2d 360, 362 (N.Y. App. Div. 2002); Christensen v. Georgia-Pac. Corp., 279 F.3d 807, 816 (9th Cir. 2002) ("Under the rescue doctrine, which has long been recognized in tort law, the foreseeable damages from a wrongful act include damages for the injuries sustained by one who seeks to rescue the person first endangered by that wrongful act."(citation omitted)).

The rescue doctrine requires a tortfeasor to anticipate the possibility that some bystander will yield to the meritorious impulse to save life or even property from destruction, and attempt a rescue. If applicable, the doctrine stretches the foreseeability limitation to help bridge the proximate cause gap between the defendant's act and the plaintiff's injury. Hutton v. Logan, 566 S.E.2d 782, 785 (N.C. Ct. App. 2002)(citation omitted). "In practice the doctrine may be used either to establish a plaintiff's claim that the defendant was guilty of actionable negligence in creating the peril which induced the rescue attempt or to eliminate the defenses of contributory negligence and assumption of risk." Ouellette v. Carde, 612 A.2d 687, 689 (R.I. 1992).

The United States Court of Appeals for the Fourth Circuit has stated that "[w]hen confronted with an emergency, a rescuer should not be charged with the consequences of errors of judgment resulting from the excitement and confusion of the moment . . . ." Furka v. Great Lakes Dredge & Dock Co., 755 F.2d 1085, 1088 (4th Cir. 1985)(Furka I). In brief, the law will not impute negligence to a rescuer unless the rescuer acted wantonly and recklessly. Id. at 1088-89.

In Furka I, and in Furka v. Great Lakes Dredge & Dock Co., 824 F.2d 330 (4th Cir. 1987)(Furka II), the Fourth Circuit held

that to find a rescuer contributorily negligent and jointly liable for injury occurring in the course of a rescue mission, the district court must analyze: (1) whether a rescue situation existed, i.e., the rescuer perceived the need for a rescue (under a wanton and reckless standard[5]), and (2) if a rescue situation is found, whether the rescuer's conduct during the rescue was wanton or reckless. Id. at 332.[6]

Defendants argue that there was no duty owed to the Plaintiffs because, by the time Defendants left the marina and discovered the steering malfunction, Plaintiffs were safely situated a substantial distance away from the marina and in no foreseeable danger. Plaintiffs present a variety of arguments regarding various duties owed in the context of the case, inter alia, the duty to maintain a seaworthy vessel, the duty to lookout, and the duty to warn. Because the rescue doctrine

---

[5] Plaintiffs need not show that there was an emergency that required a rescue; they need only show that they actually believed a rescue was needed and that this belief was not wanton or reckless. See Furka II, 824 F.3d at 331-32.

[6] The Ninth Circuit has explicitly followed Furka II and the Fifth Circuit has adopted a similar rule. Wharf v. Burlington N. R. R. Co., 60 F.3d 631, 635 (9th Cir. 1995); Grigsby v. Coastal Marine Serv. of Tex., Inc., 412 F.2d 1011, 1021 (5th Cir. 1969). But see Barlow v. Liberty Mar. Corp., 746 F.3d 518, 525–28 (2d Cir. 2014)(declining to follow the wanton or reckless standard, the Second Circuit held that rescuers should be held to the standard of a "reasonable seaman" or "reasonable mariner" under the circumstances).

9

creates a duty of care towards potential rescuers, and under the circumstances presented by Plaintiffs' version of the facts herein, Plaintiffs are foreseeable potential rescuers, Defendants owed Plaintiffs a duty as potential rescuers. Thus, it is unnecessary to address the entirety of Defendants' duty discussion.

Defendants argue that there was no real need for a rescue, that their boat was holding firm and was not in danger while awaiting the towboat. The Court finds that there are genuine issues of material fact regarding the existence of a need for a rescue attempt and, if it is found that there was no need for a rescue, whether Plaintiffs decision to proceed with one was wanton or reckless. Furka I, 755 F.2d at 1088.

It is undisputed that Mrs. Krajcsik's injury occurred during the attempted "rescue," whether warranted or not and whether reckless or not. However, there are disputed factual issues relating to whether Mrs. Krajcsik was contributorily negligent by virtue of the location in which she was standing, and whether Mr. Krajcsik was contributorily negligent in his captaining of the two boats.

There are genuine issues of material fact regarding outcome determinative issues that prevent a grant of summary judgment. For example, whether Defendants negligently took their boat out

of the marina, whether Plaintiffs acted wantonly or recklessly in deciding to undertake a rescue and in carrying out the rescue undertaken, whether Plaintiff Mrs. Krajcsik was a contributorily negligent cause of her injury, and in determining – if necessary – the parties' comparative negligence.

Accordingly, the Court concludes that it must deny Defendants' motion for summary judgment.

IV. <u>CONCLUSION</u>

For the foregoing reasons:

1. Defendant's Motion for Summary Judgment [ECF No. 20] is DENIED.

2. Plaintiffs shall arrange a case planning conference to be held by September 29, 2017 to discuss further proceedings leading to trial.

SO ORDERED, on <u>Tuesday, September 5, 2017.</u>

/s/_____<br>Marvin J. Garbis<br>United States District Judge